## T. & O. C. RY. CO. v. MARTIN JANESKI.

**1. PROOF OF DEFECTIVE APPLIANCE—ALLEGATION.**

An allegation in a pleading that a spring used in the operation of a coal bucket, had
become weak and was easily displaced from the latch, furnishes predicate for the proof
that the latch itself had become rounded by continual and general use, and comes
within the rule laid down in *Davis* v. *Guarnieri*, 45 O. S., 485.

**2. PRESENTING NEW ISSUE IN CHARGE IS ERROR.**

It is error for the court, in a charge to the jury, to present an issue not raised by the
pleadings in the case.

HAYNES, J.

The case of the Toledo & Ohio Central Railway Co., plaintiff in error,
against Martin Janeski, defendant in error, is a case in which a petition in error
was filed for the purpose of reversing the judgment of the court of common pleas
for certain errors alleged to have occurred at the time and during the trial. The
amended petition on which the case was tried, shows that the plaintiff complains
that he was in the employ of the Toledo & Ohio Central Railway Co.; that he
was at work at Toledo, and in the regular course of his business was employed
in shoveling coal at the docks owned, operated, controlled and managed by the
railroad company at the terminus of said railroad; that while he was so employed
and without any fault or negligence on his part and after he had filled a bucket of
said defendant with about one ton of coal and was standing upon its car from which
he had filled said bucket, that by reason of the carelessness and negligence of
said defendant in using and operating said bucket, (it will be observed that he is
speaking of the bucket that he himself filled) and when it was raised by the
derrick and engine of said defendant, and when about ten feet above and over
him, a spring which held the bale of said bucket in its proper place, by reason
of the imperfect, defective and worn-out condition thereof, gave way and dumped
the contents of said bucket upon the head and body of said plaintiff, injuring
his head, spine and brain and crushing and burying him thereunder, breaking
one of his ribs and otherwise internally and permanently injuring him, and
all caused by, and through the gross carelessness and negligence of said defendant
in using said coal bucket with its defective, rotten, worn-out and imperfect spring,
all of which said defendant had due and legal notice.

Now, there are two allegations here in regard to negligence; one is quite a general one, that is, that by reason of the carelessness and negligence of said defendant in using and operating said bucket. And the second is, that when the bucket was raised by the derrick ten feet above and over him, the plaintiff below, that by reason of the imperfect, defective and worn-out condition of a certain spring, the contents were dumped upon the plaintiff below, and he was injured.

The answer admits that the plaintiff below was in the employ of the defendant below, but denies all the other allegations of the petition. It further sets up and avers that the buckets used at that time were such as were generally used in handling coal under the same circumstances, by various companies; that they were safe and good, as safe as those that were in general use by railway companies, and in substance, that they were of the best make and character that the market afforded; and that they were not out of repair, but were in good repair, and were kept so at the time of the alleged injury. The answer closes with the statement that if there was any injury, it was caused by the carelessness of the plaintiff himself, which is denied by the reply of the plaintiff.

Now, there are three questions argued here before us and one point is that in regard to the admission of certain testimony or evidence that the catch itself was worn; the second was that the court erred in stating as to the manner of handling the bucket; and the third was that the court erred in its charge to the jury and certain charges that were submitted to the jury by the court, which, it is claimed by the plaintiff in error, were not issues that were made by the pleadings filed in the case.

As to that question, the defendant in error placed upon the stand its general fireman of the road who had charge not only of the equipment of that particular yard, but perhaps along the whole line, and he has testified in regard to the use of these buckets. The counsel for the plaintiff asks this question of the witness:

"What do you call a machine?" Answer, "A derrick." Question, "How many buckets and how many men?" Answer, "Six buckets and about ten or twelve shovelers. Of course, there are other men connected with this—hookers and trimmers." Mr. Hamilton: "I am trying to get at how many times this catch was going into this notch and this latch into this notch; can you give us some idea about it by which we can figure?" Answer, "Well, you can get at it all right, I suppose." Question, "It is in pretty constant use during the business season?" Answer, "Yes, sir." Question, "I suppose, as a matter of course, these edges get worn out a little, don't they?" Answer, "Oh, yes, sir." Question, "I was going to ask you, Mr. Cook, if the constant use of this latch here, sliding over this catch, didn't have a tendency to wear off the square edge of these corners and round them off a little?" Objected to on the ground that there is no allegation in the petition as to the wearing. Mr. Hamilton: "We are entitled to know all about this matter to see whether they furnished springs that, under all the circumstances of their use, would hold the latch certainly in its place." Court to Mr Hamilton: "Do you allege in your petition that the office of the spring was to keep the bucket upright?" Mr. Farquharson: "To keep the bail in its place." Mr. Smith: "It is, there was a defective, worn-out spring." The court to Mr. Smith: "I think if you had intended to require a more minute specification as to what the defect was, you should have required it by motion." Mr. Smith: "I couldn't make it more specific." Mr. Hamilton: "We want to know how it operated." The court: "I think we shall have to hear the testimony. In the narrower sense, the spring could be only that mechanism which changes the motion; but in the broader sense, we think it would be the operation performed by the spring, including the place in which it went and how it was there secured, as well as the fitness of the location into which this spring went." Mr. Smith: "I wish to note an exception to the interpretation of the petition as given by the court in the presence of the jury."

Now, it will be seen from the allegations of the amended petition which I read, that the only allegation in regard to the spring is, that the spring itself was defective, weak, and the word "rotten" was used in regard to the iron. There was no specific allegation in regard to the edges of the catch. It may be proper here in order to show the connection of this testimony, to state that the testimony shows that the coal is thrown or shoveled into an iron bucket holding about a ton; that attached to this bucket is a bail and that the bail is attached to the bucket at a point below the center of gravity nearer the bottom of the bucket than the top; that in using the bucket which is hooked onto by a certain

apparatus connected with the derrick, it is swung from the position where it is filled, around to the boat and there dumped; that in using the derrick, it is made in this form for the purpose of having the bucket empty itself when the occasion comes and the proper steps are taken to have it. In holding the bucket in an upright position while it is being swung around in place, there is attached to the inside of the bail what is called a latch, a piece of iron some twelve inches long and two and one-half inches wide and with a considerable thickness, and this is riveted to the bail. Back of that, between the latch and the bail itself is a steel spring about eleven or twelve inches long, which is also attached to the bail, the purpose of which is to throw the latch forward and to keep it forward in position. On the rim of the bucket at the top are placed two pieces of iron, one about twelve inches long or a little longer, and opening until it comes to a certain point, and the other of the same kind opening until it comes to this notch, the effect of which is to make a catch at that point. When the bucket is loaded the bail is brought up to its position to be hooked on to the attachment from the derrick, then the spring, as it comes forward, forces this latch into the catch and that holds the bucket in an upright position until it comes over the boat where it is to be emptied. By means of a rope attached to this latch, this latch is pulled back and the bucket dumps itself; then, the bottom being heavier, it is so adjusted that it is expected to come back to its upright position when emptied.

Now, as I have said, the allegation being that this spring was worn and weak, the question is whether the court was right in permitting the counsel to ask the question which was asked in regard to the edges of this latch—whether they were not worn round so that the spring would slip out easily. We think that that question is decided by the rules of law laid down in the case of *Davis* v. *Guarnieri*, 45 O. S., 485. I will simply read the rule that was laid down by the court in delivering the opinion in the case:

"The contention of counsel presupposes that no act of negligence can be proved except it be alleged in the petition. This position is untenable. The allegation in a pleading that the party complained against negligently committed the particular act which led to the injury whose redress is sought, furnishes the predicate for the proof of all such incidental facts and circumstances, both of omission and commission, as fairly tend to establish the negligence of the primary fact complained of."

Now, the primary fact complained of here in regard to this injury—the fact of negligence is, that this spring had become weak, and that it was easily displaced from the latch, or thrown out of the latch, and it seems to us, under this rule, that that fairly admitted testimony to be given which would show that the latch itself had become rounded by continued and general use; and that therefore it was within the rule as laid down in that case.

There was another objection that was made by the counsel, and that was in regard to the statement of the court to the jury, in stating the issues of the case—in regard to the manner of handling the bucket. It will be seen that he is making a statement now as to matters alleged in the petition:

"The plaintiff alleges that, by reason of this spring which held the bail in position and thus prevented the bucket from dumping until it got to the place where it ought to dump—that by reason of the defect in this spring, while this bucket was full of coal and when it had been lifted above the head of the plaintiff some ten feet—by reason of the defect in the spring of the bucket, by reason of the defective management, and by reason of the carelessness of defendant, the bucket turned over and let out, and permitted to fall upon the plaintiff, the contents of the bucket, to-wit, a ton of coal."

We think that the court was justified making that statement by reason of the charges which I have already read, in the amended petition, to-wit, that when he had filled said bucket, by reason of the carelessness and negligence of said defendant in using and operating said bucket, when it was raised by a derrick, etc.

Now, there is a general allegation, that by reason of the carelessness and negligence of said defendant in using and operating said bucket, that the injury

occurred, in connection with the weak spring. We think it is sufficiently sustained, that is, this allegation; at any rate, if there was any objection, it would be required to make it more definite and certain, as a matter of course; that for the purpose of making that allegation, we think the statement is sufficient.

We come now to a more important question in the case, and that is upon the charge of the court. In order to properly discuss that, it will be necessary to state some of the facts in the case as appears by the record before us.

The plaintiff, in order to sustain the issues on his part, called first as a witness, Frank Boguci who proceeded to testify in regard to the accident; that he was at work with Janeski; that he was filling a bucket—not this bucket in controversy—but another bucket with coal; that the bucket was placed alongside of the car; that he was upon the car and Janeski was also upon the car, Janeski appearing to stand on the end of the car, on the outside of a box car which held the coal. The car was about 30 feet long and at the other end of the car another bucket was being filled which was the bucket that is in controversy here. That was being filled by a couple of men, and when they had filled it, the hooker, the person who hooked the apparatus on to the bucket, Valentine Tomczak by name, hitched the rope to the bucket, and thereupon the engineer who was stationed upon the dock near the derrick and whose duty it was by means of a steam engine that was in operation there, to raise this bucket or these buckets and transfer them by means of the derrick around to the boat, raised the bucket up about ten or twelve feet and commenced to swing it around to the boat; that in swinging it, he passed around towards the end of the car on which Janeski and Boguci were at work; that when it came over or reached a point where it was over the head of Janeski, a little jerk was heard made by the engineer in moving the apparatus in some way, that at the same instant the bucket was overturned and a ton of coal came down upon Janeski, producing the injury that he complains of.

In further giving the evidence for the purpose of establishing the negligence of the defendant below in that matter, the witness was asked in regard to the spring, and he testified that there was a spike or nail placed behind the spring on the bail on this particular car. He testified that he had seen it placed there about two weeks before by this man Tomczak, who stated that, in his opinion, the accident was caused by the weakness of that spring, by its giving way at the time this little jerk was heard upon the bucket. But beyond the simple fact that he claimed that he had seen, prior to that time, a nail behind this spring, he testifies of no fact whatever in regard to the matter. It was just a mere matter of opinion.

The testimony of this witness is followed by the testimony of Janeski himself, who testified in regard to the bucket striking him; that he had no knowledge in regard to the spring being unsafe. Tomczak was called by the plaintiff who also testified in regard to the movement of this bucket, and while he has no recollection of seeing a nail behind the spring at the time, he testifies that when the bucket started forward to go, in its movements towards the boat, that the latch was in its proper place and it was all right, so far as the latch was concerned. He does, however, express the opinion that the weakness of the spring was probably the cause of the bucket tipping, but of that he has no knowledge. He does not deny in terms or admit that he ever put a nail behind the spring.

Now, that is all the testimony upon the part of the plaintiff in regard to the spring and the nail behind it. Both Boguci and Janeski were inquired of as to whether they had before that time seen these buckets turned, any of them, and they both testify that they had seen buckets turn prior to that time, and that was followed then by the testimony of the defendant, who called Thomas R. Cook, as I have already stated, who was the general foreman of the company and of its motive power; also the engineer on the dock and a man by the name of Smith, who was the immediate foreman of the dock yard and John H. Murphy, who was

the blacksmith, and who had charge of the work there and who made repairs upon these various buckets.

The effect of the testimony of these witnesses is this, and they all agree upon this — that they examined this bucket immediately after this accident and Campbell, the engineer, says that he immediately swung the bucket forward and set it down upon the dock allowing the apparatus to remain attached to it. Cook was there, or immediately came there, and Smith, who was near by, came, and Murphy, the blacksmith, was in the immediate neighborhood and came there, all in a period of perhaps some ten or fifteen minutes. Cook testified that when he got there, he examined it, and there was a nail or spike behind the spring firmly fixed in place. In that he corroborates the testimony of Janeski. Campbell, Smith and Murphy, who helped to examine it at the time, did not see the nail; but they all made an examination in regard to the bucket by handling the bail back and forth and in various ways at that particular place as to the condition of the spring and of the catch and they say that it was in good condition and all right. They testify that they immediately put that bucket at work again and so carried on work with it and it continued on all the time doing work and that it operated all right. As suggested by the counsel for the defendant in error, they did not attempt to swing the bucket around with a load in it; their examination was all confined to such a one as they might make at the point where the bucket was then placed, to-wit, while it was then upon the dock and attached to the derrick apparatus at that point. They also testified to the fact that in using these buckets they sometimes failed to turn over and that, without any reason that was discoverable by the parties themselves, that is, by these witnesses.

Campbell testified that in moving this machine, as he moved it in the ordinary course, having raised it up to a point ten feet high as it swung around, he moved the handle or the lever of the apparatus attached to the engine, the effect and purpose of which was to stop the bucket from being raised any higher —that as he turned this spring, the effect of it would be, in place of raising it, to let the bucket drop a little—perhaps five or six inches, and that would give a little drop and jerk to it, and he supposed that the bucket was turned at that time, because it was insecurely latched at the time it started from its place; that it had been going along well enough until this jerk upon it; but the testimony shows that they sometimes turn without any known cause. The testimony of Smith is that he examined those daily.

The testimony of Murphy is that he had them all fixed up in the spring and examined them from time to time and watched them daily, being at about somewhere in the neighborhood of fifty or sixty in use at that time, and were using them in unloading cars.

Now, this is the testimony that was laid before the jury at least so far as the question of negligence is concerned at the time the case was concluded. Upon the conclusion of the case, the court proceeded to state the issues that were made, and having stated the issues, he says:

"Now, as bearing upon the issues here, we have been asked to give you the following instructions on the part of counsel for the plaintiff."

Thereupon the court read and gave to the jury in charge the following instructions asked by the plaintiff, some four in number.

"And we also give you the following requests presented by counsel for the defendant."

Thereupon the court read and gave to the jury in charge the following requests presented by defendant through its counsel, to-wit, some fourteen in number.

The court followed that by stating briefly the definition in law, of negligence, "that the measure of negligence was the measure of care which persons of ordinary prudence were accustomed to exercise in similar cases." Then having

charged the jury that the plaintiff was bound to exercise care as well as the defendant, etc., the case was submitted to the jury.

Now, they say that the question presented is, whether the court submitted to the jury the issues as made by the pleadings.

The four requests that were given on behalf of the plaintiff, and which were excepted to by the defendant at the time, are these:

First—"It was the duty of the defendant to use ordinary and reasonable care in providing and maintaining for the plaintiff a safe place where to do his work and to provide safe machinery with which to work, and to keep the same in repair, and in the performance of such duty, must use usual and ordinary care; and if, in consequence of the failure by the defendant to use such usual and ordinary care the plaintiff was injured, and the plaintiff did not contribute to such injury by his own lack of ordinary care and caution, he is entitled to recover in this action."

Second—"It was the duty of the defendant to exercise due and reasonable care, to provide a suitable place in which, and suitable appliances with which the employee, himself being in the exercise of due care, could perform his duty, without being exposed to unnecessary dangers."

Third—"If the jury find that the plaintiff was injured while in the performance of his duty in consequence of the overturning of a bucket of coal upon him, and they further find that the plaintiff was working at a place rendered unsafe by the carrying of a bucket filled with coal over his head, the appliances for which were unsafe, in consequence of their being out of repair, and the fact of their so being out of repair was known to the defendant, the plaintiff is entitled to recover, if such overturning of the bucket was caused by such unsafe appliances, unless he was guilty of contributory negligence on his own part, or knew the danger he was in, and voluntarily assumed the same."

Fourth—"If there was danger while carrying the coal from the cars to the vessel by means of buckets transferred by a derrick, and such buckets were likely to be moved over the head of the plaintiff while employed in his work, and there was danger of a bucket overturning and dumping the coal on the plaintiff while at work, and such danger and the risk therefrom was not one of the ordinary risks of his employment, but was of a special nature, and the plaintiff was not cognizant thereof, or by ordinary care would not become cognizant thereof, and the danger and risk was not patent, it was the duty of the defendant company to notify its employee of such risk and danger; and if, by exposure of such special risk he was injured, the plaintiff is entitled to recover, if the employer was cognizant of the risk, or ought to have been cognizant thereof."

It will be perceived that in that 4th paragraph, nothing is said about the imperfect machinery; it says " * *    * By means of buckets transferred by a derrick, and such buckets were likely to be moved over the head of the plaintiff while employed in his work, and there was danger of a bucket overturning and dumping the coal on the plaintiff while at work, and such danger and the risk therefrom was not one of the ordinary risks of his employment," etc.

Now, it is clear that the court has submitted to the jury in these charges, the question whether this was a safe place for this company to place this man at work; whether they were or were not guilty of negligence in putting him in the place where they did put him to work. We are unable to find and there is no allegation of that kind in the pleadings; that is clear, definite and certain; and we are unable to find anything in the evidence of the case that shows that any issue was made before the jury, or that any testimony was offered upon the one side and rebutted on the other whereby that issue was made in the evidence without objection on the part of the defendant. The testimony that was offered to the jury was testimony that would naturally arise, and properly upon the issue. That was tendered by the plaintiff, and the defendant excepted to it, to-wit, that the spring upon this bucket was defective, and that by reason of the defective spring, the bucket overturned and the plaintiff below was injured.

Under this charge, the jury may well have gone on and decided the question upon that issue, or rather upon any other issue in the case. The plaintiff is certainly entitled in the pleadings to have the case stated upon which he intends to rest, and if the plaintiff states acts of negligence by reason of which he claims he has been injured by the act of the defendant, the defendant has a right to join issue upon that and go to trial. If also there should be testimony introduced

that was outside the issues that were tendered by the pleadings, and the defendant, without objection, should permit the evidence to be introduced and join issue in that way, practically join issue orally before the jury, then the party would be estopped from raising the question upon error. But that does not occur here. There is no time or place at which the testimony could be objected to; there is no ground of objection to it. The testimony was upon that issue, but when the court comes to charge the jury, he presented another issue, an additional issue to them to which he invites their attention and upon which he allows them to pass.

Now, we are constrained to the conclusion that, in doing that, the court erred, and erred to the injury and detriment of the plaintiff in error. We have read and appreciate the case in the 15th Ohio State, as well as *Davis* v. *Guarnieri*, *supra*. In the case of *Cresinger* v. *Lessee of Welch*, 15 O. S., 156, they follow the same line that I have already stated, and for the reasons that I have stated, that practically can be made applicable to this case.

The question as to whether the verdict is not sustained by the evidence, the questions arising upon the evidence, will not be discussed by us. The case must go back for another trial, and in regard to the merits of the case, upon the facts themselves, we shall express no opinion here. For the reasons I have stated, we are constrained to send the case back for a new trial.

*Doyle, Scott & Lewis*, for plaintiff in error.

*A. Farquharson*, and *Hamilton & Ford*, for defendant in error.